1

2   Teresa Starinieri, Esq. (SBN 175690)
    SKEBBA, ISAAC & BUECHLER
3   777 South Figueroa Street, Suite 1507
    Los Angeles, CA 90017
4   Tel.:  213-689-3625
    Fax.: 213-226-4019
5
    Attorneys for Defendants, SAN DIEGO FAMILY HOUSING LLC; LINCOLN MILITARY
6   PROPERTY MANAGEMENT LP; LINCOLN BP MANAGEMENT INC., LINCOLN
    MILITARY HOUSING
7

8

9                   UNITED STATES DISTRICT COURT

10                  EASTERN DISTRICT OF CALIFORNIA

11

12  CRYSTAL LANDOSKEY,                     CASE NO.:

13               Plaintiff(s),
                                           DEFENDANT LINCOLN MILITARY
14       vs.                               HOUSING'S NOTICE OF REMOVAL

15  SAN DIEGO FAMILY HOUSING LLC;          [28 U.S.C. §§ 1331,1441,1442,1446]
    LINCOLN MILITARY PROPERTY
16  MANAGEMENT LP; LINCOLN BP
    MANAGEMENT INC; LINCOLN
17  MILITARY HOUSING, Does 1 to 15, et al.,
18
                 Defendant(s).
19

20

21
        Pursuant to 28 U.S.C. §§ 1331,1441,1442, and 1446, Defendant LINCOLN MILITARY
22
    HOUSING, hereby removes to this Court a civil lawsuit filed in the Superior Court of the
23
    County of Kings, Case Number 19C-0246.  In support of this Notice of Removal, Defendant
24
    states:
25
        1.  On July 1, 2019, Plaintiff Crystal Landoskey filed her Complaint with the Kings
26
    County Superior Court.  On September 16, 2019, Defendants San Diego Family Housing LLC,
27
    Lincoln Military Property Management LP, Lincoln BP Management Inc., were served with a
28

                                    1

1  copy of Plaintiff's Summons and Complaint, Notice of Judicial Assignment and Case

2  Management Conference, and plaintiff's civil case cover sheet.  On October 21, 2019,

3  Defendants San Diego Family Housing LLC; Lincoln Military Property Management LP, and

4  Lincoln BP Management Inc., filed a motion to strike portions of plaintiff's complaint.  On

5  January 29, 2020, Plaintiff filed her first amended Complaint with the Kings County Superior

6  Court.  On February 11, 2020, defendants San Diego Family Housing LLC; Lincoln Military

7  Property Management LP, Lincoln BP Management Inc. filed and served their answer to

8  Plaintiff's First Amended Complaint along with notice of positing jury fees and demand for jury

9  trial.  Defendant Lincoln Military Housing was served with the First Amended Complaint on

10  April 15, 2020.  No other pleadings have been served on Defendants in this action.  A copy of

11  the Summon(es) and Complaint, Notice of Judicial Assignment and Case Management

12  Conference which were served are attached to this Notice of Removal as Exhibit A.  A copy of

13  the Motion to Strike and associated documents which were served are attached to this Notice of

14  Removal as Exhibit B.  A copy of Plaintiff's First Amended Complaint which was served on

15  defendants San Diego Family Housing LLC; Lincoln Military Property Management LP, Lincoln

16  BP Management Inc., is attached as Exhibit C.  A copy of defendants San Diego Family Housing

17  LLC, Lincoln Military Property Management LP,  and Lincoln BP Management Inc.'s answer to

18  Plaintiff's First Amended Complaint, demand for trial by jury and notice of positing jury fees is

19  attached as exhibit D.

20  2. Defendants San Diego Family Housing LLC; Lincoln Military Property Management

21  LP, Lincoln BP Management Inc., join in and consent to the removal. (Declaration of Teresa M.

22  Starinieri "Starinieri Decl." at ¶ 18  ).

23  3. This action is removable to this Court on three independent bases:  (1)  pursuant to 28

24  U.S.C. §1331, because the events alleged in the Complaint occurred within a federal enclave;

25  and (2) under 28 U.S.C. §1442, because defendants are a federal agency and (b) at all relevant

26  times were acting under a federal officer.

27  4. Because the events alleged in the Complaint occurred on a federal enclave, this Court

28  has jurisdiction under 28 U.S.C. §1331.  See, e.g., Akin v. Ashland Chem. Co. , 156 F.3d 1030,

1034 (10 Cir. 1998) (finding that "[p]ersonal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction.") see also Federico v. Lincoln Military Housing, LLC, et al., 901 F.Supp. 2d 654 (E.D. Va Oct. 18, 2012) (upholding removal of nearly identical contract (residential lease) and tort claims against affiliated "Lincoln" entities that occurred on federal enclave). Authority for federal enclave jurisdiction arises from Article I, section 8, clause 17 of the United States Constitution, which provides in relevant part that "Congress shall have the power . . .to exercise exclusive Legislation . . .over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings."  U.S. Const., Art. I § 8, cl. 17.

5.  Federal courts, including the Ninth Circuit, routinely interpret this clause to permit removal of tort claims filed in state court if the alleged tort was committed on a federal enclave. The Ninth Circuit held, in Durham v. Lockheed Martin Corp., 445 F.3d 1247 (9th Cir. 2006), that "Federal Courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" Id. at 1250: Willis v. Craig, 555 F.2d 724, 726 n.4 (9th Cir. 1977) (the Court had "no quarrel with the propriety of enclave jurisdiction in this case (if the facts support it), even though the state courts may have concurrent jurisdiction.").

6.  In Akin, several Air force employees brought toxic tort claims against certain manufacturers of asbestos in state court. 156 F.3d at 1033-34.  The complaint alleged that the employees were exposed to asbestos at the Tinker Air Force base in Oklahoma City.  Id. at 1033. The defendants removed the case to federal court based on federal enclave jurisdiction.  Id. at 1034.  The Tenth Circuit upheld removal of the case, finding that "personal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction."  Id.; see also, Stokes v. Adair, 265 F.2d 662 665-66 (4th cir. 1959) (finding federal district court possessed jurisdiction for personal injuries arising on a federal enclave); Mater v. Holley, 200 F.2d 123, 124-25 (5th Cir. 1952)(finding that federal courts have jurisdiction over torts committed on federal enclaves); Lawler v. Miratek Corp.,

2010 WL 743925, at *2 (W.D. Tex. Mar. 2, 2010) (finding that state law claim for defamatory statement allegedly made at Fort Bliss could be removed under federal enclave jurisdiction).

7. A federal enclave is created where the federal government acquires land by purchase or condemnation with the consent of the state or commonwealth in which the land is located. See Humble Pipe Line v. Waggonner, 376 U.S. 369, 371-72 (1964). "In determining whether a claim arises on a federal enclave, courts have simply looked to see where all the 'pertinent events' took place." Rosseter v. Industrial Light & Magic, 2009 WL 210452, at *2 (N.D. Cal. Jan 27, 2009) (citing Stiefel v. Bechtel Corp., 497 F.Supp.2d 113, 1148 (S.D. Cal 2007)).

8. In this case, all of the acts alleged in the First Amended Complaint occurred on a federal enclave owned by the United States of America, Department of the Navy ("Navy"). Plaintiff was visiting a resident who resided in military housing located at 2571 C Tarawa in Lemoore, California, which is part of the Naval Air Station neighborhood. See Compl. Page 1 of 1, cause of action – premises liability, ¶ Prem L-1 (Ex. A to Notice of Removal). Plaintiff has asserted various claims grounded in tort, alleging that she suffered damages when she slipped and fell on standing water on the property. See Compl. Page 1 of 1, cause of action – premises liability, ¶ Prem L-1. All events upon which these claims are based occurred on the premises located on the Naval Air Station. See id. (describing location of residence including complaints of conditions).

9. The property on which the incident occurred is located on Lemoore Naval Air Station, and other properties surrounding it in Lemoore, California, was originally ceded to the United States Government from Mexico in the Treaty of Guadalupe Hidalgo of 1848. Treaty of Guadalupe Hidalgo, Art. V, 1848 (Starinieri Dec., Exhibit 1). Section 3 of the California Statehood Act conditioned the State of California's admission to the Union on acknowledgment of, and promise to not interfere with or impair, federal title to public lands. An Act for the Admission of the State of California into the Union. Thirty-First Congress, Sess. 1, 1850. (Starinieri Decl., Exhibit 2). By the California Statutes of 1987, chapter 56, the State of California ceded to the United States exclusive jurisdiction over all lands within the Sate then held, occupied or reserved by the government of the United States for military purposes or

1  defense, or which thereafter would ceded or conveyed to the government of the United States for
2  such purposes.  Cal. Statutes, 1987, Ch. 56. (Starinieri Decl., Exhibit 3).  The property in
3  question, including the Subject Property on Tarawa, is physically located on the military base of
4  Naval Air Station Lemoore, in Lemoore, California.

5      10.  Removal of this action is proper based on this Court's federal question jurisdiction
6  under 28 U.S.C. §1331.  This case concerns military housing operated under the Military
7  Housing Private Initiative adopted by Congress in 1996 to improve the quality of service
8  members' housing.

9      11.  This case concerns military housing operated under the Military Housing Private
10  Initiative adopted by Congress in 1996 to improve the quality of service members' housing.  10
11  U.S.C. §§ 2871-85.  Under the Initiative, various branches of the Armed Forces have established
12  PPVs to own, develop and manage military housing.  Typically, the military leases land to a
13  private entity selected through a competitive bidding process and enters into a PPV agreement
14  with a branch of the Armed Forces to develop and manage the military housing on it.  Service
15  members who reside in the housing receive a Basic Allowance for Housing from the military to
16  pay their rent.  The Navy exercises significant control and involvement in the operation of the
17  PPV and management of these properties. See Federico v. Lincoln Military Housing, LLC, et al.,
18  901 F.Supp. 2d 654, 673 (E.D. Va Oct. 18, 2012) (explaining how the Navy "plays a significant
19  role in the operation" of the PPV).

20      12.  As in the Federico case, removal of this action is proper based on this Court's federal
21  question jurisdiction under 28 U.S.C. § 1331.  The PPV at issue here is Defendant San Diego
22  Family Housing, LLC.  The Navy entered into an operating agreement to form San Diego Family
23  Housing, LLC ("Operating Agreement").  San Diego Family Housing, LLC, the PPV, has
24  primary responsibility for managing the military housing, through important actions (including
25  capital upgrades to the properties) cannot be undertaken without the Navy's consent.

26      13.  Pursuant to the Operating Agreement, San Diego Family Housing LLC entered into a
27  property management agreement with certain defendants.  Under the terms of the Property
28

1  Management Agreement, these defendants act as an agent of the PPV in performing certain
2  property management functions, such as property leasing.

3      14.  These claims belong in federal court because the federal government has a strong
4  interest in and will be impacted by the claims in this case.  The Enclave Clause of the United
5  States Constitution is a recognition by the Framers that there are some properties in which the
6  federal government has particularly strong interests vis-à-vis the states.  By its terms, the Enclave
7  Clause applies to lands acquired with the states' consent "for the Erection of Forts, Magazines,
8  Arsenals, Dock-Yards, and other needful Buildings."  U.S. Const. Art. I § 8 cl. 17.  The federal
9  government had and has strong interests in the capital and the installations that it uses to provide
10 for the common defense.  Plaintiff's allegations and claims concerning events on a federal
11 enclave, raises the very interests sought to be protected by the Enclave clause. Federico, 901 F.
12 Supp.2d at 673-74.

13     15.  The Navy has contractual obligations and proprietary and financial interests that
14 would be affected by the Claims and allegations in this case.  The case also may affect the
15 public-private venture agreements that have been adopted by the Navy and implemented by
16 PPVs throughout the country.  In these circumstances, the federal government undoubtedly has a
17 substantial interest in the resolution of the claims raised in this suit.  See Federico, 901 F.
18 Supp.2d at 673 (finding that "[a] review of the Complaint, the facts, the parties, and the nature of
19 the public-private venture reveal that almost everything in this case implicates the United States
20 Navy in one form or another.")

21     16.  Because Plaintiff's claims are based on alleged acts that occurred on a federal
22 enclave and because the federal government has a substantial interest in that enclave and the
23 claims arising on it, this Court has jurisdiction to hear this controversy pursuant to 28 U.S.C. §
24 1331.

25     17.  Removal is also appropriate under 28 U.S.C. § 1442(a)(1). The federal officer
26 removal statute authorizes "[t]he United States or any agency thereof or any officer (or any
27 person acting under that officer) of the United States or of any agency thereof, sued in an official
28 or individual capacity for any act under color of such office" to remove a civil action

1  commenced in state court to federal court in the district in which the case is currently pending.

2  28 U.S.C. § 1442(a).

3      18.  The federal officer removal statute authorizes "removal of an entire case, even

4  though only one of its controversies [or defendants] might involve a federal officer or agency."

5  Alsup v. 3-Day Blinds, Inc., 435 F. Supp.2d 838, 844 (S.D. Ill. 2006); see also Morgan v.

6  Huntington Ingalls, Inc., 879 F.3d 602 (5th Cir. 2018); Savoie v. Huntington Ingalls, Inc., 817

7  F.3d 457, 463 (5th Cir. 2016).  ("[R]emoval of the entire case is appropriate so long as a single

8  claim satisfies the federal officer removal statute.").  The Supreme Court has emphasized that the

9  federal officer removal statute must be liberally construed.  See Watson v. Philip Morris Cos.,

10  551 U.S. 142, 147 (2007) ("this Court has made clear that the [federal officer removal] statute

11  must be liberally construed") (internal quotation marks omitted).

12      19.  Here, the United States has a proprietary interest in the military housing operations

13  under which defendants and the Navy operate and manage the property where this incident

14  occurred under the public-private venture agreement.  In Watson, the Supreme Court explained

15  that an entity "acts under" a federal officer when it "assist[s], or help[s] carry out, the duties or

16  tasks of the federal superior."  551 U.S. at 152; see also id. at 151 ("the removal statute applies to

17  private persons who lawfully assist  [a] federal officer in the performance of his official duty")

18  (internal quotation marks omitted).  Following Watson's guidance, the Second circuit held that a

19  chemical company was "acting under" a federal officer for the purposes of removal when it

20  'contracted with the government to provide a product that the Government was using during war

21  – a product that, in the absence of Defendants, the Government would have had to produce

22  itself."  Isaacson v. Dow Chemical Co., 517 F. 3d 129,137 (2d Cir. 2008).  The Ninth Circuit,

23  has similarly recognized that the acting –under requirement is met where a government

24  contractor is acting at the direction of a federal agent or officer, and that no special additional

25  requirements exist to assert this defense.  Durham, 445 F.3d at 1251.  Likewise, the Sixth Circuit

26  held that a government contractor acted under federal officers when it performed a contract to

27  remove allegedly hazardous mold from a government building –a service that the government

28

1    otherwise '"would have had to perform '" itself.  <u>Bennet v. MIS Corp.</u>, 607 F.3d 1076, 1088 (6th

2    Cir. 2010) (quoting <u>Watson</u>, 551 U.S. at 154).

3        20.  In this case, assuming the acts alleged in the Complaint are true, the alleged bodily

4    injuries arose from defendants' performance of their duties to the Navy under the Operating

5    Agreement and Property Management Agreement.  Because all of the conduct alleged in the

6    Complaint "occurred while defendants were performing their official duties pursuant to

7    agreements with the Navy, <u>Isaacson</u>, 517 F.3d at 137-38, the "under color of office" requirement

8    is met here.  <u>See also</u> <u>Corley v. Long-Lewis, Inc.</u>, 688 F.Supp. 2d 1315, 1334-35 (N.D. Ala.

9    2010) ("All a defendant needs to do to show a causal nexus is to establish that the plaintiff's

10    claims arise from the defendants performance of their duties under their contract with the

11    Navy.")

12        21.  Defendant ., LINCOLN MILITARY HOUSING has timely removed this action

13    because it filed this Notice of Removal within thirty days of being served with plaintiff's

14    Complaint.  28 U.S.C. § 1446(b)(1).

15        22.  The Superior Court for the County of Kings is located in the United States District

16    Court for the Eastern District of California.  Accordingly, this Court is the proper Court to which

17    to remove this action.

18        23.  Pursuant to 28 U.S.C. § 1446(a), Defendants are required to attach to this Notice "a

19    copy of all process, pleadings, and orders served upon" them.  Accordingly, a copy of the

20    Summon(es) and Complaint, Notice of Judicial Assignment and Case Management Conference

21    are attached to this Removal as Exhibit A.  A copy of the Motion to Strike and associated

22    documents which were served are attached to this Notice of Removal as Exhibit B.  A copy of

23    Plaintiff's First Amended Complaint which was served on defendants San Diego Family

24    Housing LLC; Lincoln Military Property Management LP, Lincoln BP Management Inc., is

25    attached as Exhibit C.  A copy of defendants San Diego Family Housing LLC, Lincoln Military

26    Property Management LP,  and Lincoln BP Management Inc.'s answer to Plaintiff's First

27    Amended Complaint, demand for trial by jury and notice of positing jury fees is attached as

28    Exhibit D.

1      24. Defendants San Diego Family Housing LLC; Lincoln Military Property Management

2 LP, Lincoln BP Management Inc., join in and consent to the removal. (Declaration of Teresa M.

3 Starinieri "Starinieri Decl." at ¶18).

4      25. A copy of the written notice required by 28 U.S.C. § 1446(d) addressed to Plaintiff's

5 counsel and to the Clerk of the Superior Court for the County of Kings is attached as Exhibit E to

6 this Notice of Removal. It will be filed with that Clerk and, along with this Notice of Removal,

7 will be served on Plaintiff after the filing of this Notice of Removal.

8      WHEREFORE, Defendants hereby remove the pending state court action to the United

9 States District Court for the Eastern District of California pursuant to 28 U.S.C. §§1331, 1441,

10 1442 and 1446.

11                       Respectfully Submitted,

12 DATED: May 7, 2020               SKEBBA, ISAAC & BUECHLER

13                  By:   /s/Teresa M. Starinieri

14                       Teresa Starinieri, Esq.
                          Attorneys for Defendants, SAN DIEGO FAMILY

15                       HOUSING LLC; LINCOLN MILITARY
                      PROPERTY MANAGEMENT LP; LINCOLN

16                       BP MANAGEMENT INC, LINCOLN
                      MILITARY HOUSING

17

18

19

20

21

22

23

24

25

26

27

28